CARMELA T. PAGAY (State Bar No. 195603)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 229-1234
Facsimile:  (310) 229-1244
Email: ctp@lnbyb.com

(Proposed) Attorneys for Todd A. Frealy
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| In re | Case No. 6:19-bk-10365-WJ |
|---|---|
| MARY ELIZABETH PLYLER, | Chapter 7 |
| Debtor. | **APPLICATION OF CHAPTER 7 TRUSTEE TO EMPLOY KELLER WILLIAMS REALTY AS REAL ESTATE BROKER AND TO ENTER INTO EXCLUSIVE LISTING AGREEMENT; DECLARATION IN SUPPORT THEREOF** |
| | [No Hearing Required] |

TO THE HONORABLE WAYNE E. JOHNSON, UNITED STATES BANKRUPTCY JUDGE:

Todd A. Frealy, the chapter 7 trustee (the "Trustee," or "Applicant") for the estate of Mary Elizabeth Plyler, the debtor herein (the "Debtor"), respectfully applies for authority to employ Keller Williams Realty ("Broker") as the Trustee's real estate broker pursuant to an Exclusive Authorization & Right to Sell Agreement, from April 8, 2019 through February 14, 2020.  In support, the Trustee represents as follows:

///

///

1      1.     On January 15, 2019, the Debtor commenced this case by filing a voluntary

2   petition under chapter 7 of the Bankruptcy Code.

3      2.     Applicant is the Chapter 7 trustee for the Debtor's bankruptcy estate.

4      3.     Among the Debtor's scheduled assets is that certain real property located at

5   7151/7155 Madison Avenue, Citrus Heights, California 95621 (the "Property").

6      4.     In order to realize upon the value in the Property, the Trustee will require the aid

7   of a licensed real estate broker to market and sell the Property effectively, provide assistance

8   concerning the structure of any potential sales of the Property, and assist the Trustee in

9   negotiation and documentation of various transactions regarding the sale of the Property.

10     5.     Selling the Property for the benefit of the creditors is essential to the effective

11   administration of the estate.  The Trustee believes that employing Broker to market the Property

12   will best accomplish this goal.

13     6.     The Trustee proposes to hire Broker, through its agent, Paul Boudier, as

14   his real estate broker, from April 8, 2019 through February 14, 2020.

15     7.     The Trustee has agreed to pay a six percent (6%) commission in connection

16   with the listing and sale of the Property.  However, Broker will accept such compensation as the

17   Court deems reasonable.

18     8.     The Trustee requires a professional real estate broker's assistance to accomplish

19   the following tasks:

20        a.     To order, analyze, and prepare all documentation necessary to list and

21        advertise the Property for sale.

22        b.     To list the Property with the most propitious listing services available; to

23        show the Property as necessary and respond to potential purchasers' inquiries; and to

24        solicit reasonable offers of purchasers.

25        c.     To convey all reasonable purchase offers to the Trustee and the Trustee's

26        counsel, and subject to the Trustee's approval, to negotiate, and confirm the acceptance

27        of the best offer.

28

1           d.     To cause to be prepared and submitted to escrow on behalf of the Trustee

2    any and all documents necessary to consummate a sale of the Property.

3        9.     Attached hereto as Exhibit 1 and incorporated herein by reference is a copy of the

4    proposed agreement for the sale of the Property.

5        10.    The Trustee is informed and believes, and based thereon alleges, that Broker and

6    its agent, Paul Boudier, have no connection with the Trustee, the Debtor, her creditors, the

7    Office of the United States Trustee ("OUST") or any employees of the OUST, bankruptcy

8    judges, or any other party in interest, and hence, that they neither represent nor hold an interest

9    adverse to the estate and are "disinterested persons" as that term is used in the Bankruptcy Code.

10   Based upon Paul Boudier's declaration, it appears that Broker holds no pre-petition claims

11   against the estate.

12       11.    Paul Boudier advises the Trustee that he has a license to sell real property in

13   the State of California and is experienced in dealing with real properties, such as the Property, in

14   the area in which the Property is located.  (See Declaration of Paul Boudier, attached hereto.)

15       12.    The Trustee has given notice of this Application, pursuant to Local Bankruptcy

16   Rule 2014-1(b)(2).

17       WHEREFORE, the Trustee prays for an entry of order authorizing him to employ

18   Broker as his real estate broker, at the expense of the estate, and to authorize him to execute an

19   Exclusive Authorization & Right to Sell Agreement with Broker, on the terms and conditions

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

1   set forth in <u>Exhibit 1</u> attached hereto, and for all other further and proper relief as the Court

2   deems appropriate.

3   DATED: April 11, 2019

                                        TODD A. FREALY, Chapter 7 Trustee

5   Presented by:

6   LEVENE, NEALE, BENDER, YOO
    & BRILL L.L.P.

8   By: */s/ Carmela T. Pagay*
        CARMELA T. PAGAY
9      (Proposed) Attorneys for Todd A. Frealy
        Chapter 7 Trustee

4

### DECLARATION OF PAUL BOUDIER

I, Paul Boudier, do hereby declare:

1.      This Declaration is made in support of the foregoing Application to Employ Keller Williams Realty as Real Estate Broker and to Enter into Exclusive Listing Agreement, filed by Todd A. Frealy, the chapter 7 trustee (the "Trustee") for the bankruptcy estate of Mary Elizabeth Plyler (the "Debtor").  The following statements are true of my own personal knowledge, except as to those matters which are herein stated upon my information and belief, and as to those matters, I believe them to be true.

2.      I am a California-licensed real estate agent with Keller Williams Realty ("Broker"), which the Trustee seeks to employ by the attached Application.

3.      Subject to the terms, conditions, and approval provided in the Application by which the Trustee seeks to employ Broker as listing agent for the Debtor's real property located at 7151/7155 Madison Avenue, Citrus Heights, California 95621 (the "Property") , and described in Exhibit 1 to the Application (the "Property"), Broker desires to be so employed.

4.      Attached hereto as Exhibit 2 and incorporated herein by reference is a copy of my Resume, more fully setting forth my expertise.

5.      Broker is a well-established real estate brokerage firm with experience marketing and selling real properties in the area where the Property is located.

6.      The other brokers, agents, and support staff who will handle this matter, including myself, are experienced in marketing and selling real properties of similar kind and condition as that of the Property and are thus well-qualified to assist in the promotion and sale of the Property.  As indicated in the Resume attached to this Declaration as Exhibit 2 and incorporated herein by this reference, I have specialized in the listing, promotion, negotiation, and sale of properties similar to the Property.

7.      To the best of my knowledge, Broker is not connected with the Trustee, the Debtor, any creditor or other person in interest, or their respective attorneys, the Office of the United States Trustee ("OUST") or employees of the OUST, bankruptcy judges, or with the Debtor's estate.

8.    I am informed and believe that Broker and its agents, associates, and employees are disinterested persons as the term is defined in 11 U.S.C. § 101(14), and I:

    a.    am not a creditor, an equity security holder, or an insider of the Debtor;

    b.    am not and was not, within 2 years before the date of filing the petition, a director, officer, employee of the Debtor;

    c.    do not have an interest materially adverse to the interests of the estate of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason; and

    d.    am not a relative or employee of the OUST or a bankruptcy judge.

9.    Broker is not a pre-petition creditor of the Debtor's estate.

10.    Broker has been advised of and has agreed to accept the proposed employment subject to the provisions of 11 U.S.C. § 328(a).  Broker understands that the Bankruptcy Court may allow compensation different from the compensation set forth herein if the Court subsequently determines that such agreed upon terms are improvident in light of developments that could not have been anticipated at the time the Application was approved.

11.    I understand and agree that no compensation or reimbursement will be paid except upon application to or approval by the Bankruptcy Court after notice to all creditors of the Debtor's estate or upon such notice as the Bankruptcy Court may hereafter order.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed this _12_ day of April, 2019, at Roseville, California.

PAUL BOUDIER

# Exhibit 1

**CALIFORNIA ASSOCIATION OF REALTORS®**

**RESIDENTIAL LISTING AGREEMENT**
**(Exclusive Authorization and Right to Sell)**
**(C.A.R. Form RLA, Revised 12/18)**

Date Prepared: _04/08/2019_

1. **EXCLUSIVE RIGHT TO SELL:** Re: Plyler, Mary Elizabeth Chapter 7 Case # 6:19-, bk-10365-WJ Todd A. Frealy Chapter 7 Trustee _ ("Seller") hereby employ and grants _Keller Williams Realty_ ("Broker") beginning (date) _April 8, 2019_ and ending at 11:59 P.M. on (date) _February 14, 2020_ ("Listing Period") the exclusive and irrevocable right to sell or exchange the real property described as _7151 & 7155 Madison Ave_, situated in _Citrus Heights_ (City), _____ (County), California, _95621_ (Zip Code), Assessor's Parcel No. _232-0264-012-0000_ ("Property").
   ☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
   ☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _Two Hundred Ninety Thousand_
      Dollars ($ _290,000.00_ ).
   B. Listing Terms: _____

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay Broker as compensation for services irrespective of agency relationship(s), either ☒ _6.000_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price, or ☐ $ _____, as follows: AND _____
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   OR (2) If within _90_ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _Zero_
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☒ _2.500_ percent of the purchase price, or ☐ $ _____
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _None_
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _None_
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2018 California Association of REALTORS®, Inc.

Seller's Initials ( _____ ) ( _____ )

**RLA REVISED 12/18 (PAGE 1 OF 5)**
**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

Keller Williams Realty, 548 Gibson Dr. # 200 Roseville   CA 95678   Phone: 9169195775   Fax: 8668969739   Todd A. Frealy
Paul Bostler       Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

000008

Property Address: **7151 & 7155 Madison Ave., Citrus Heights, Ca 95621** _____ Date: **04/08/2019**

4. A. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price:
ADDITIONAL ITEMS EXCLUDED: _____
ADDITIONAL ITEMS INCLUDED: _____
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

B. **(1) Leased Or Not Owned Items:** The following items are leased or not owned by Seller:
☐ Solar power system    ☐ Alarm system    ☐ Propane tank    ☐ Water Softener
☐ Other _____
**(2) Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system    ☐ Windows or doors    ☐ Heating/Ventilation/Air conditioning system
☐ Other _____
Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

5. **MULTIPLE LISTING SERVICE:**
A. Broker is a participant/subscriber to _____ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and: (ii) may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

Seller's Initials ( _____ )( _____ )        Broker's/Agent's Initials ( ____ )( _____ )

---

Seller's Initials ( _____ ) ( _____ )

Property Address: **7151 & 7155 Madison Ave , Citrus Heights , Ca  95621**                    Date: **04/08/2019**

B.  MLS rules generally provide that residential real property and vacant lot listings are to be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

C.  MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

(1) **Property Availability On The MLS; Address On the MLS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet. Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

(2) **Feature Opt-Outs:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(a) **Comments And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(b) **Automated Estimate Of Value:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

6.  **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

7.  **BROKER'S AND SELLER'S DUTIES:**
A.  Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

B.  Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

C.  Investigations and Reports: Seller agrees, within 5 (or ___) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural  Pest  Control  ☐ General  Property  Inspection  ☐ Homeowners  Association  Documents ☐ Other _____

D.  Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

8.  **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

9.  **AGENCY RELATIONSHIPS:**
A.  **Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
B.  **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.
C.  **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

Seller's Initials  (_____)  (_____)

RLA REVISED 12/18 (PAGE 3 OF 5)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**
Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com                    Todd A Freely

000010

Property Address: **7151 & 7155 Madison Ave., Citrus Heights , Ca  95621**　　　　　　Date: **04/08/2019**

D. **Confirmation:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

E. **Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

10. **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

11. **PHOTOGRAPHS AND INTERNET ADVERTISING:**

A. In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.

B. Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take Images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

12. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

13. **SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

14. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

15. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

16. **ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☒ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Trust Advisory (C.A.R. Form TA)
☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction
*1.) Commissions and fees for the sale of the property will be paid by the lender(s) and will not be the responsibility of the seller. 2.) Sale will only be complete if approved by the bankruptcy Court 3.) Property is sold "as-is/where-is" condition with no warranties expressed or implied. 4.) Sale is subject to Bankruptcy Court approval and overbid. 5.) Buyer to pay a $25,000.00 buyer premium at close of escrow subject to Lender(s)/Lien Holder and Bankruptcy approval.*

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within 5 Days After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. **DISPUTE RESOLUTION:**

A. **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. Exclusions from this mediation agreement are specified in paragraph 19B.

Seller's Initials (　　　) (　　　)

RLA REVISED 12/18 (PAGE 4 OF 5)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    Todd A Fraidy

Property Address: **7151 & 7155 Madison Ave , Citrus Heights , Cs 95621** _____ Date: **04/08/2019**

   B. **ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

   C. **ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

21. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____

☐ **REPRESENTATIVE CAPACITY:** This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _____ Re: Plyter, Mary Elizabeth Chapter 7 Case # Date _____
        Re: Plyter, Mary Elizabeth Chapter 7 Case # 8:19-
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Seller _____ bk-10365-WJ Todd A. Frealy Chapter 7 Date _____
        bk-10365-WJ Todd A. Frealy Chapter 7 Trustee
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

☐ Additional Signature Addendum attached. (C.A.R. Form ASA)

Real Estate Broker (Firm) **Keller Williams Realty** _____ DRE Lic. # **01272617** _____
Address **508 GIBSON DRIVE # 200** _____ City **Roseville** _____ State **Ca** Zip **95678**
By _____ Tel: **(916)919-5775** E-mail **paul@paulboudler.com** DRE Lic.# **01179722** Date **4/13/19**
   **Paul Boudler**
By _____ Tel. _____ E-mail _____ DRE Lic.# _____ Date _____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 1991-2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

RLA REVISED 12/18 (PAGE 5 OF 6)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 6)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    Todd A Frealy



**CALIFORNIA ASSOCIATION OF REALTORS®**

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 12/15)

Property Address: **7151 & 7155 Madison Ave , Citrus Heights , Ca  95621** ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards; A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      (3) If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that you have no disclosure duty "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

© 1991-2015, California Association of REALTORS®, Inc.

Seller's Initials ( _____ ) ( _____ )

**SA REVISED 12/15 (PAGE 1 OF 2)**

**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

Keller Williams Realty, 548 Gibson Dr. # 200 Roseville    CA 95678    Phone: 9169195775    Fax: 8665969739    Todd A Prealy
Paul Beudler    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Property Address: _7151 & 7155 Madison Ave , Citrus Heights , Ca  95621_                   Date: _04/08/2019_

B. **Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

C. **Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

D. **Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do no have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

E. **EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

F. **Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

4. **MARKETING CONSIDERATIONS:**

A. **Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others. By doing this, you have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

B. **Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

C. **Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

D. **Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

5. **OTHER ITEMS:** _____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____   Date _____

Print Name _Re: Plyler, Mary Elizabeth Chapter 7 Case # 6:13-_

Seller _____   Date _____

Print Name _bk-10365-WJ Todd A. Frealy Chapter 7 Trustee_

Real Estate Broker (Listing Firm) _Keller Williams Realty_                              DRE Lic.#: _01272617_

By _____   _Paul Boudier_ DRE Lic.# _01179722_   Date _7-12-19_

By _____                             DRE Lic.# _____

Address _548 GIBSON DRIVE # 200_         City _Roseville_         State _Ca_   Zip _95678_

Telephone _(916)919-5775_   Fax _____   E-mail _paul@paulboudier.com_

© 1991-2015, California Association of REALTORS®, Inc. Copyright claimed in Form SA, exclusive of language required by California Civil Code §1710.2. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

SA REVISED 12/15 (PAGE 2 OF 2)

**SELLER'S ADVISORY (SA PAGE 2 OF 2)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com          Todd A. Frealy

000014



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(Seller's Brokerage Firm to Seller)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/18)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _____ Date _____
                                    Re: Ryler, Mary Elizabeth Chapter 7 Case # 6/18-

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____
                                    6k-10365-WJ Todd A. Frealy Chapter 7 Trustee

Agent _____ Keller Williams Realty _____ DRE Lic. # 01272617
          Real Estate Broker (Firm)

By _____ DRE Lic. # 01179722 _____ Date 4-12-19
     (Salesperson or Broker-Associate, if any)  Paul Boudier

© 1991-2018, California Association of REALTORS®, Inc.

AD REVISED 12/18 (PAGE 1 OF 2)

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

Keller Williams Realty, 505 Gibson Dr. #203 Roseville      CA 95678        Phone: 9269199725        Fax: 8665965739        Todd A Fealy
Paul Boudier                                 Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 41026    www.zipLogix.com

000015

## CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
(a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions.
(b) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. (c) "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. (d) "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. (e) "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the agent pursuant to the terms of the agreement. (f) "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. (g) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. (h) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (i) "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. (j) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (k) "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. (l) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (m) "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. (n) "Buyer's agent" means an agent who represents a buyer in a real property transaction.
2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgement of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: (a) The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
2079.16 Reproduced on Page 1 of this AD Form.
2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and that seller, respectively. (b) As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
2079.18 (Repealed pursuant to AB-1289)
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
2079.21 (a) A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. (b) A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. (c) "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. (d) This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



AD REVISED 12/18 (PAGE 2 OF 2)

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    Todd A Freely



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
(C.A.R. Form PRBS, Revised 12/18)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual brokers or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, Buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| | Re: Plyler, Mary Elizabeth Chapter 7 Case # 6:19- | Date |
| Seller _____ | bk-10365-WJ Todd A. Frealy Chapter 7 Trustee | Date |
| Seller _____ | | |
| Buyer _____ | | Date |
| Buyer _____ | | Date |
| Buyer's Brokerage Firm _____ | DRE Lic # _____ | Date |
| By _____ | DRE Lic # _____ | Date |
| Seller's Brokerage Firm _Keller Williams Realty_ | DRE Lic # _01272617_ | Date _4-12-19_ |
| By _____ | DRE Lic # _01179722_ | Date |
| _Paul Noudler_ | | |

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

PRBS REVISED 12/18 (PAGE 1 OF 1)
**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

Keller Williams Realty, 543 Gibson St. # 200 Roseville    CA 95678    Phone: 9369195775    Fax: 8665969739    Todd A Frealy
Paul Noudler    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**SHORT SALE INFORMATION AND ADVISORY**
(C.A.R. Form SSIA, Revised 11/12)

Property Address: **7151 & 7155 Madison Ave , Citrus Heights, Ca 95621**                          Date: **April 8, 2019**

This Short Sale Information and Advisory is intended to give general information regarding short sales, their potential impact, and the rights and responsibilities of the parties involved. It is not intended as legal advice for any particular property owner or buyer. Seller and Buyer should consult with their own professional advisors for legal, tax, credit and personal advice. Real estate brokers cannot and will not provide such advice.

1.  **WHAT IS A SHORT SALE:** A short sale is the name used to describe a real estate transaction where the seller's lender(s) agree to allow the property owner to sell the property for less than the amount of the loan(s) secured by the property. The consent of a seller's lender(s) is necessary because without it there would not be enough money from the sale to pay off the lender(s) in full and to pay other costs of the sale. As a result, the lender's lien(s) would remain on title, and a seller would be unable to transfer title to a buyer free of monetary liens. (Properties that are worth less than the amount owed to the secured lender(s) are often referred to as being "underwater" or distressed properties).

2.  **ALTERNATIVES TO A SHORT SALE:** Owners of distressed or underwater properties are faced with difficult choices that could have financial and emotional consequences. Any of the following or other alternatives potentially have negative tax or credit consequences, or both, for the owner:
    **A.** A loan modification is an arrangement between a borrower and a lender. It can involve a reduction in the interest rate on the loan, a deferment in payments on the loan, an extension of time to pay back the loan, a reduction in principal of the loan, a combination of these possibilities, or other changes to the repayment plan. A loan modification requires the consent of both lender and borrower.
    **B.** A foreclosure is a legal process through which the lender acquires title to the property from a borrower who has stopped making payments on a loan. The lender can foreclose whether or not the borrower consents.
    **C.** A deed in lieu of foreclosure occurs when the borrower offers to transfer the property to the lender, in lieu of the lender having to go through the foreclosure process, and the lender agrees to accept title to the property from the borrower and forgives the debt. A deed in lieu of foreclosure requires the consent of both lender and borrower.
    **D.** Bankruptcy is a legal action typically filed by a borrower to have debt(s) discharged. An automatic stay occurs as soon as a borrower files bankruptcy, staying all actions against the borrower. While a petition for bankruptcy can have the effect of delaying a foreclosure, it does not necessarily prevent a foreclosure from eventually occurring. No lender consent is required for a borrower to file bankruptcy.

3.  **LENDER AGREEMENT TO SHORT SALE:** In order for a short sale to be completed, the lender(s), at a minimum, must agree to release the property from the lender(s) lien(s) to allow the sale. The lender(s) may or may not agree to reduce the amount owed to satisfy the debt. If not, the lender(s) may continue to pursue the borrower for payment of the balance of the debt. Prior to granting approval of the sale, the lender(s) may require the borrower to disclose all of the borrower's assets. They may require that the borrower liquidate other assets. They may require that the borrower sign an agreement to repay some or all of the debt at some later time. They may require that the borrower secure the unpaid debt with other assets owned by the borrower. Additionally, they will generally require that the transaction be arm's length, and that all terms of any benefit conferred on the seller be fully disclosed and that a seller cannot stay in the property following the sale. Finally, many first lien holders will limit the amount they will allow to be paid to a second lienholder, further complicating negotiations for the short sale. The lender will usually submit a "term sheet" to the borrower indicating the terms to which lender(s) will agree. If a seller and a buyer do not modify their contract to comply with the lender(s) terms, the lender(s) may not permit the short sale to proceed. Seller's are strongly advised to seek legal and tax advice regarding review of the term sheet. Brokers cannot and will not give legal or tax advice on the lender's term sheet or its effect on the Buyer and Seller's agreement or on the consequences to sellers and buyers should they proceed to close. There is no assurance that once the lender(s) have begun short sale negotiations, they will discontinue the foreclosure process.

4.  **SELLER'S CONTINUING LIABILITY ON THE DEBT:** Many borrowers who attempt a short sale are concerned about whether the borrower is released from any further liability to the lender(s) or whether the lender can pursue the borrower for any unpaid balance of the debt. Some refer to continuing liability as a deficiency judgement. Generally speaking, a deficiency judgement is the right of a lender to pursue the borrower for the difference between the amount the lender receives and the amount the borrower owes on the debt. Deficiency judgements in California are prohibited in certain circumstances.

Buyer's Initials (_____) (_____)                                   Seller's Initials (_____) (_____)

© 2010-2012, California Association of REALTORS®, Inc.

SSIA REVISED 11/12 (PAGE 1 OF 4)

**SHORT SALE INFORMATION AND ADVISORY (SSIA PAGE 1 OF 4)**

Keller Williams Realty, 548 Gibson Dr, #200 Roseville    CA 95678              Phone: 9169195775          Fax: 8668969729          Todd A Prealy
Paul Boudier                         Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Property Address: **7151 & 7155 Madison Ave., Citrus Heights, Ca. 95621**    Date: **April 8, 2019**

**A. Short Sale:**

1. Beginning July 15, 2011, Code of Civil Procedure 580e provides that any lender who approves a short sale in writing is not permitted to seek or collect a deficiency against the borrower if the loan is secured by a Trust Deed on residential property containing 1-4 units. This law may not be waived. The July 15, 2011 law does not apply to: (i) lienholders on other types of property; or (ii) a borrower who has committed fraud or waste; or (iii) borrowers who are corporations, limited liability companies, or limited partnerships. Prior to this law coming into effect, from January 1, 2011 the restriction on lenders seeking deficiencies for approved short sales only applied to lenders holding a first trust deed on residential 1-4 units.

2. For properties or borrowers to which CCP 580e does not apply, some lenders in negotiating a short sale will want the owner to sign a note for the balance of the unpaid principal. Other lenders will release the lien only, but not forgive the underlying debt. Some lenders will "reserve their rights." Thus, in these situations whether or not a lender retains the right to pursue a deficiency following a short sale becomes a negotiable term for each sale.

3. Seller is encouraged to (i) obtain a written agreement from lender(s) or other applicable lien holders addressing whether and to what extent Seller will be released from any monetary or other claim, obligation, or liability upon approval of the short sale; and (ii) have that written agreement reviewed by an attorney, CPA or other appropriate professional of seller's choosing.

**B. Foreclosure:**

1. **Purchase Money Loans:** Loans given by lenders to purchase 1-4 unit properties, one of which will be occupied by the borrower, and seller-financed purchases are subject to "purchase money" anti-deficiency protection rules. Generally, this means that the lender cannot pursue the borrower for any deficiency after the property is **foreclosed** upon by the seller or lender, whether the seller or lender uses a non-judicial trustee sale or a judicial foreclosure. Refinancing a purchase money loan causes it to lose any purchase money protection it might have.

2. **Trustee Sales:** If a lender **forecloses** sale instead of by judicial foreclosure, that lender is barred from seeking any deficiency from the borrower after the trustee sale, even if the loan was not purchase money.

3. **Refinanced Liens:** The anti-deficiency protections become more clear for loans that are refinanced. Generally, loans that are refinanced lose their "purchase money" protection. Lenders extending refinances may be able to pursue a deficiency judgment against the borrower directly following a judicial foreclosure. However, beginning January 1, 2013 Borrowers who refinance a purchase money loan on owner-occupied residential property with 1-4 units, and do not take any cash out from the refinance receive the same anti-deficiency protection as if the refinance loan was a purchase money loan.

4. **Junior Liens:** The anti-deficiency protections for Junior Lien holders are also somewhat unclear. Junior debt used to purchase the residence (such as 90/10 first and second) would have "purchase money" protection generally. However, junior liens that are refinanced or junior liens that are used to take out equity do not have "purchase money" protection. Such "non-purchase money" junior lienholders may be able to pursue a deficiency judgement against the borrower directly after a Trustee's sale by a senior lienholder or after a judicial foreclosure by the junior lienholder. Although the law is not entirely clear, home equity loans (HELOCs) may fall into this category.

5. **Other Liens:** Many other types of liens may be recorded on titles including, without limitation, homeowners association liens, judgement liens, tax liens, and child support liens. Generally foreclosures by any lienholders senior to such liens do not protect the owner of the property from later legal action by the lienholder to collect on the obligation.

**5. CREDIT AND TAX CONSEQUENCES:**

**A. CREDIT:** All of the owner's options discussed above will most likely have a negative impact on the owner's credit and on the owner's ability to finance or purchase property for some time. The credit impact and length of time the owner would have difficulty in obtaining a loan to purchase property again, or to be approved for any other credit transactions such as obtaining a credit card, leasing an apartment, or even to gain employment, varies. Lenders may view short sales and alternatives differently depending on their own underwriting guidelines and those established by governmental or quasi-governmental bodies. To find out more information about the impact to your credit score, go to www.myfico.com.

**B. TAX:** With some exceptions, a reduction or discharge of a debt obligation by a lender results in income to the borrower. The income might not be taxable if the debt was being used to acquire, construct or substantially improve a borrower's principal residence. Another exception exists if the forgiveness of debt results from a situation where the lender is barred by law from collecting the debt, as in a foreclosure of purchase money debt. Insolvency and bankruptcy rules can also shield a borrower from forgiveness of debt income. Generally, when any debt is forgiven by a lender, they are required to provide the borrower a 1099 and it will be up to the borrower to make the proper claim on their tax return to avoid debt forgiveness income. Some of these rules are temporary, and state laws and federal laws differ. Broker has advised Seller that if Lender agrees to accept less than full payment, the difference may result in taxable income to Seller even though Seller does not receive any cash proceeds from the sale. Seller may also be taxed on the gain in value of the Property from the date of Seller's purchase to the date of sale, regardless of the amount of any existing loans/liens.

**C. PROFESSIONAL ADVICE:** Seller is advised to discuss with an attorney, CPA or other professional of Seller's choosing before (i) accepting any offer to present to lender or (ii) agreeing to any changes requested by lender to an already accepted contract.

Buyer's Initials  (_____) (_____)          Seller's Initials  (_____) (_____)

**SSIA 11/12 (PAGE 2 OF 4)**          **SHORT SALE INFORMATION AND ADVISORY (SSIA PAGE 2 OF 4)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

Tedd A Fresty

Property Address: **7151 & 7155 Madison Ave., Citrus Heights, Ca. 95621**                    Date: **April 8, 2019**

6. **POTENTIAL IMPROPRIETIES:** It is an unfortunate reality that many persons, including real estate licensees, mortgage lenders, and attorneys, among others, have taken advantage of owners of underwater or distressed properties. Some of the schemes present themselves as "rescues" of the homeowner, promising to let them stay in the property, to protect their credit, or to provide payments to them after closing, and usually outside of the escrow. Both the California Department of Real Estate (DRE) (http://www.dre.ca.gov/) and the California Attorney General (http://www.ag.ca.gov) have issued written warnings of potential red flags in short sales and other rescue schemes. Some of these red flags are:

A. **No license:** The DRE believes that a real estate license is generally required to negotiate any short sale;

B. **MARS:** Short sale negotiators who do not represent a seller or buyer in a short sale are generally required to comply with the Mortgage Assistance Relief Services rules and provide required disclosures and notices to a seller.

C. **Up-front fees:** No real estate licensee can collect any up-front or advance fee without having first obtained a "no objection" letter from the DRE and no up-front fees may be taken for arranging a loan modification;

D. **Surcharges:** Charges by third parties that are not disclosed to the short sale lender and usually paid outside of escrow;

E. **3rd Party negotiations:** The licensing and fee requirements above apply whether the negotiation occurs through a Broker, representing a seller or a buyer in the transaction, or a 3rd party short sale negotiator. As with other real estate activity, short sale negotiator fees are negotiable and not set by law. The existence, fee and licensed status of any 3rd party short sale negotiator shall be disclosed to the lender and must be approved by the lender as part of the overall compensation to be paid in the short sale transaction.

F. **Straw buyers and house flipping:** Buyers misrepresent the value of the property to the short sale lender and flip the property to another buyer already in place;

G. **Other:** Other potential red flags include: guarantees to stop the foreclosure; instructions not to contact the lender; transfer of title prior to close (often to a trust) as a condition of negotiating with the lender; the buyer is an LLC; the buyer wants a power of attorney from the seller; and the buyer hires the third party negotiator or wants to negotiate directly with the lender.

While most of the activities on the above list on their face are not fraudulent, they serve as warning signs that the owner and the real estate agents involved should proceed with caution.

7. **BUYER CONSIDERATIONS:** Short sales are often difficult transactions taking considerably longer that a typical real estate transaction to complete. There is no guarantee that the lender or lenders will agree to the terms of the purchase offer or that they will respond in any timely fashion or even respond at all. There is no guarantee that a seller or a buyer will agree to any terms proposed by the lender as a condition of releasing the lien or the debt on the property. Buyers may expend money on inspections, loan applications, escrow fees and other costs that they will not be able to recover from anyone if the lender does not approve the transaction. Buyers may also have difficulty obtaining the return of their deposit in escrow, if a seller becomes noncommunicative during the short sale process. Generally, sellers also have the right to continue to give offers to their lender(s) even if they have a contract with an existing buyer. Brokers cannot give any assurances as to what will happen. Buyers are strongly cautioned that any undisclosed and unapproved payments to junior lienholders or to seller or to outside third party negotiators may be a form of lender fraud. Buyers are also strongly cautioned that writing offers on more than one short sale property with the intent to purchase only one such property could be a misrepresentation giving rise to legal claims by a seller including a claim for the buyer's deposit.

8. **NATIONAL MORTGAGE SETTLEMENT (SETTLEMENT) AND CALIFORNIA HOMEOWNER BILL OF RIGHTS:** In early 2012 California joined a national settlement agreement between five of the nation's largest lenders (Bank of America, JPMorgan Chase, Wells Fargo, Citigroup and All Financial) and most states ("the Settlement"). The Settlement obligates the lenders to, among other things, write down or refinance some loans, extinguish certain unpaid balances and provide transition assistance to some homeowners. Loans owned by Fannie Mae or Freddie Mac are not covered by the Settlement. In Fall of 2012, California enacted laws, effective January 1, 2013, commonly and collectively referred to as the California Homeowner Bill of Rights ("Homeowners BOR"). These laws prohibit foreclosures while an approved short sale is pending or while a loan modification is in process or on appeal, as well as other requirements. Whether a borrower qualifies for any of the advantages of the Settlement or the Homeowner BOR requires an analysis of the borrower's loan and it's applicability to either of those items. Such an analysis is beyond the scope of Brokers expertise. If a buyer or seller has questions about whether the borrower's loan is covered by either the Settlement or the Homeowner BOR, or how either of those items can affect a short sale transaction, that party should discuss the matter with a lawyer or accountant of their own choosing.

9. **BROKER ROLE:** A real estate broker cannot give legal or tax advice in connection with any of the options available to the borrower nor can the broker suggest what is the best course of action for the owner. Unfortunately, the owner is faced with extremely difficult choices having a lasting impact on the owner. Owners are strongly cautioned that they must seek legal and tax advice in what is not only a choice impacting taxes and credit, but also personal issues affecting the owner and often the owner's family. The broker's role is to assist the owner with the actual sale of the property in a short sale transaction, not to provide legal or tax advice or to guarantee the best possible outcome for the parties, or to assure a buyer that any particular transaction will be completed. Brokers do not, and cannot, assure that either a seller or a buyer will perform on their agreement or that the lender(s) will agree to any of the terms presented. Brokers are not a party to the contract between Buyer and Seller.

Buyer's Initials  ( _____ ) ( _____ )                                        Seller's Initials  ( _____ ) ( _____ )

SSIA 11/12 (PAGE 3 OF 4)

**SHORT SALE INFORMATION AND ADVISORY (SSIA PAGE 3 OF 4)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com                    Todd A Fresly

Property Address: _7151 & 7155 Madison Ave , Citrus Heights , Ca  95621_____   Date: _April 8, 2019_

**10. BROKER AUTHORITY:** Seller authorizes Broker to: (1) market the Property for sale, (2) contact lenders concerning lender's approval of a short sale (C.A.R. Form ARC) and Seller agrees to give Broker any necessary information to negotiate with lenders, and (3) advertise in the MLS and other advertising medium that the property transfer, sales price and payment of commissions are subject to lenders approval. If lenders will not cooperate, Broker may cancel the listing agreement.

| | | |
|---|---|---|
| ☒ Seller ☐ Buyer _____ | Re: Plyler, Mary Elizabeth Chapter 7 Case # | Date _____ |
| ☒ Seller ☐ Buyer _____ | bk-10365-WJ Todd A. Freely Chapter 7 | Date _____ |
| ☐ Seller ☐ Buyer _____ | | Date _____ |
| ☐ Seller ☐ Buyer _____ | | Date _____ |

Real Estate Broker (Selling Firm) _____   DRE Lic # _____

By (Agent) _____ DRE Lic # _____ Date _____

Address _____ City _____ State ___ Zip ____

Telephone _____ Fax _____   Email _____

Real Estate Broker (Listing Firm) _Keller Williams Realty_   DRE Lic # _01272617_

By (Agent) _____ _Paul Boudier_ DRE Lic # _01179722_ Date _4/1/19_

Address _548 GIBSON DRIVE # 200_____   City _Roseville_ State _Ca_ Zip _95678_

Telephone _(916)919-5775_ Fax _____   Email _paul@paulboudier.com_

© 2010-2012, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

SSIA 11/12 (PAGE 4 OF 4)



**SHORT SALE INFORMATION AND ADVISORY (SSIA PAGE 4 OF 4)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Todd A Freely

## ADDENDUM TO RESIDENTIAL LISTING AGREEMENT
## (EXCLUSIVE AUTHORIZATION AND RIGHT TO SELL)

Todd A. Frealy (the "Trustee"), the chapter 7 trustee for the bankruptcy estate (the "Estate") of Mary Elizabeth Plyler (the "Debtor") in In re Mary Elizabeth Plyler, Case No. 6:19-bk-10365-WJ in the United States Bankruptcy Court for the Central District of California, Riverside Division ("Bankruptcy Court"), agrees to grant Keller Williams Realty (the "Broker") the exclusive rights to negotiate a sale of the vacant real property commonly described as 7151/7155 Madison Avenue, Citrus Heights, California 95621 (the "Property"), upon the terms and conditions of the Residential Listing Agreement (the "Listing Agreement") dated April 8, 2019, as amended by the following terms and conditions of this Addendum:

1.    Addendum.    This Addendum amends the Listing Agreement. Notwithstanding any contrary terms and conditions in the Listing Agreement, this Addendum shall apply.

2.    No Liability.    The Trustee is listing the Property for sale with the Broker in his capacity as the chapter 7 trustee of the Debtor's bankruptcy estate ("Estate"), and not in his personal capacity and no liability or obligations shall accrue to him personally as a result of such listing.

3.    Termination.    The Trustee may terminate the Listing Agreement at his option and upon written notice to the Broker at any time, and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in his capacity as Trustee, as a result of any such termination.

4.    Abandonment.    The Trustee reserves the right, in his sole discretion, to determine not to sell the Property and to abandon the Property by serving a notice of his intention to abandon the Property upon the Debtor, all creditors, the United States Trustee, and all parties in interest. In the event of any such abandonment, the Listing Agreement and this Addendum shall terminate and no liability or obligations shall accrue to the estate or to the Trustee, either personally or in his capacity as Trustee, as a result of any such abandonment and termination.

5.    Conditions of Sale.    The Broker agrees and understands that any sale of the Property shall be subject to the following terms and conditions:

a.    The Trustee is selling the Property in his capacity as the chapter 7 Trustee of the Estate and not in his personal capacity and no liability or obligations shall accrue to him personally as a result of any sale.

b.    If for any reason, or no reason whatsoever, the Trustee is unable to deliver possession or title to the Property to any potential purchaser, the purchaser's sole remedy shall be the return of any money that the purchaser has deposited towards the purchase of the Property.

1

c.    The Trustee is selling the Property in an "AS IS" condition or basis by quitclaim deed without any representations or warranties whatsoever, including without limitation representations or warranties as to title, oil and mineral rights, city or government agency notifications regarding work to be done, marketability of title, ownership, physical condition, compliance with California, city or federal statutes, codes, ordinances, or regulations, geological stability, zoning, suitability for improvement, and fire insurance policies to cover any improvements on the Property, nor any assurances regarding the subdividability of the Property.

d.    The sale of the Property is subject to Bankruptcy Court approval after notice to the Debtors, all creditors, the United States Trustee, and other parties in interest as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules.

e.    The purchaser shall, at the purchaser's sole expense, acquire any and all insurance policies that the purchaser desires to cover the Property. The Trustee does not agree to acquire or transfer any insurance policies to the purchaser.

f.    The purchaser is to arrange for all financing of the acquisition of the Property before the close of escrow.

g.    All escrow fees shall be shared and paid on a 50/50 basis by the Trustee and the purchaser.

h.    The purchaser shall, at the purchaser's sole expense, install all smoke detectors, if any, as may be required by state or local law. The Trustee is not required to deliver to the purchaser a written statement of compliance with any applicable state and local law.

i.    The purchaser shall, at purchaser's sole expense, obtain and all pest control inspection repairs that purchaser deems appropriate.

j.    If any local ordinance requires that the Property be brought into compliance with minimum energy conservation standards as a condition of sale or transfer, the purchaser shall comply with and pay for these requirements at purchaser's sole expense.

k.    Any sale is subject to the following conditions being satisfied before the close of escrow:

(1)    The Trustee must prevail with respect to any objections to the proposed sale; and

(2)    The Trustee reserves the right to reject any and all offers which in his judgment are insufficient.

2

000023

I.    The Property is being sold subject to:

(1)    All general and special taxes that are presently due, or may become due, regarding the Property, other than property taxes, which shall be prorated as of the close of escrow;

(2)    The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the California Revenue and Taxation Code; and

(3)    Any and all easements, restrictions, rights and conditions of record and rights of way, against, on or regarding the Property.  Title, however, is to be transferred free of secured claims of record.

6.    Payment of Commission.  The commissions to be paid to the Broker shall only be paid from the proceeds of the sale of the Property.  If a sale is not consummated for any or no reason whatsoever, the Broker shall not be entitled to commissions.

7.    Entire Agreement.  This Addendum and the Listing Agreement, to the extent that such Listing Agreement is not contrary to the terms and conditions herein, constitute the entire contract between the parties.  All prior agreements between the parties are incorporated into this contract.  Its terms are intended by the parties as a final expression of their agreement with respect to such terms as are included herein, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.  The parties further intend that this agreement constitutes the complete, final and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial or arbitration proceeding, if any, involving this agreement.

Dated: April 11, 2019

_Todd A. Frealy_
Todd A. Frealy
Chapter 7 Trustee

Keller Williams Realty

Dated: April 12, 2019

By: _Paul Boudier_
Paul Boudier

3

000024

# Exhibit 2

000025

**Keller Williams Realty**
*PROBATE / DEFAULT / BK*
548 Gibson Dr, #200 Roseville, CA 95678
Direct: 916-919-5775
Toll Free: 866-611-5613
Office: 916-580-0977
Fax: 916-676-8593
Email: paul@paulboudier.com
Website: http://www.paulboudier.com



*Wall Street Journal Top 100 Realtor in Nation.*
*We have the systems, support and commitment to provide the*
*highest level of customer service the industry has to offer.*

## Performance Snapshot
- 97% Cash for Keys Success Ratio
- 99.5% BPO Turn Time < 24 Hours
- 1000+ BPOs Completed
- 28 DOM List - Closed
- 5% Fallout Ratio
- 150+ Average Yearly Transactions
- 3000+ Office Closings Yearly
- 97.4% Sales Price - BPO Ratio
- 93% Owner Occupant Sales

## Clientele
Trustees Served: John Bell, John Roberts, Geoffery Richards, Michael Dacquisto, Lynn Martinez, Asset Management: AHMSI/POWER REO, Aurora, Bank of America, Bank of The West, Bankers Asset Management, Brighton REO, Chrisley, CLMG - Beal Bank, CoreLogic, East West Bank, Equity Pointe, Financial Asset Services, First American, Golden One, Goodman Dean, Green River Capital, Impac Owned Solutions, ING, InSource Financial, Integrated Asset Services, Keylink, Keystone, Kondaur Capital, Lighthouse, MD Webb, Nations REO, Nationstar, New Vista, NRT REO, Old Republic, PNC Bank, REDC, Reverse Mortgage Solutions, Servicelink, Single Source, SAMREO, USRES, Vanderbilt, & Wells Fargo.

## REO Systems
Equator, Res.Net, E-Broker House, Top Producer, Aspen Grove, DISPOSolutions, REO Connex, Pyramid, REO Central, Cascade

## Territory: Northern California
Sacramento, Placer, El Dorado, Nevada, Sutter, Yuba, & Yolo Counties
*(Zip Code Service List Available)*

## License & Insurance Information
CA License # 01179722
CA Broker License # 01272617
E & 0 # 2DA3PL0000755-06
Coverage $2,000,000
Workers Comp # 57 WEC GH6836
Coverage $1,000,000
Liability #6011369407
Coverage $2,000,000
$500k Cash Reserve for Property Preservation/Rehab Funds

## Key Skills
- 300+ marketing search engines
- High end luxury certified/guild
- Full suite of REO services
- 23 years local market expert
- 11 person team
- 350 asset listing capability
- 1000 closed transactions
- Bi-lingual staff
- 9 years construction background
- City & county ordinance
- Municipal code/HOA specialist
- Title curative

## Awards & Recognition
- #1 CA office for production & units closed
- TOP Unit Producer of the Year for 2008-2016
- Trained by industry leaders: KW University, Mike Ferry & Brian Buffini
- Paul's recognition started in 1995 when he received the PRO Award
- Continuous Masters Club member
- Certified Luxury Home Marketing Specialist/GUILD member
- Continuous Ranked in the Nation by the Wall Street Journal Top 1000

## Professional Experience
2000- current: Opened the 1st Keller Williams Realty office in California
- One of the top KW market centers of more than 600 locations
- Top 10 office in the State of California for production and units closed
- Awarded TOP Unit Producer of the Year for 2008-2016.
- Paralegal Education- The Probate Process From Start to Finish for Paralegals

1994 - 2000: Coker Ewing Real Estate
- Top Producer Award
- Pro Award
- Master Club & Marketing Masters of Sacramento Member

## Community Involvement
- Board Member of the Lazarus Project for 15 years
- Youth program sponsor for schools, sports and other extracurricular activities
- Sponsor of The Junior Achievement program
- Mentor Program at John Adams Academy

## Affiliations & Certifications
FORCE, CDPE, Open Door Institute Regional Leader, NVSI Member, REO Network, ERN Charter, NAHREP, AREAA, NAREB, Default School Certified, Five Star REO and Short Sale Certified, Equator Platinum #109724 RESNET AMP member #36395. Ongoing Paralegal training in the Probate and Bankruptcy sector.

*"Your Partner In Success"*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **APPLICATION OF CHAPTER 7 TRUSTEE TO EMPLOY KELLER WILLIAMS REALTY AS REAL ESTATE BROKER AND TO ENTER INTO EXCLUSIVE LISTING AGREEMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) *April 15, 2019*, I checked the CM/ECF docket for this bankruptcy case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Todd A. Frealy (TR)    taftrustee@lnbyb.com, taf@trustesolutions.net
- Nancy L Lee    bknotice@mccarthyholthus.com, nlee@ecf.courtdrive.com
- Gary S Saunders    Linda@saunderslawoffice.com,
  Gary@saunderslawoffice.com;Arthur@saunderslawoffice.com
- Valerie Smith    claims@recoverycorp.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) *April 15, 2019*, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
Mary Elizabeth Plyler
6740 Ivanpah
Twentynine Palms, CA 92277

Paul Boudier
Keller Williams Realty
548 Gibson Dr, #200
Roseville, CA 95678

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 15, 2019    Megan Wertz | /s/ Megan Wertz |
|---|---|
| *Date*                *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**